Mr. Capelli was convicted of possession with intent to distribute 100 mg or more of marijuana and a conspiracy to commit that crime. The charges arose from a warrantless search of a private plane where several duffel bags with a total of 178 kilos of marijuana were discovered. The defendant moved to suppress that evidence and the district court found he did not have an objectively reasonable expectation of privacy. That is, it found that the search did not violate his Fourth Amendment rights. We're asking this court to hold that the defendant did in fact have an objectively reasonable expectation of privacy and in the alternative, we're asking the court to remand for an evidentiary hearing on this issue. The district court based its holding on three factors. First, that the defendant was not present at the time of the search. Second, that he placed the bags under the control of a third party, that is, the pilot. And third, that planes like ours are readily mobile and highly regulated and so the privacy interest is thereby lessened. I'd like to concentrate first on the court's finding that the bags were placed under the control of a third party. The district court erred in not considering the relationship between the defendant and the pilot. This is important to an analysis of whether there is an objectively reasonable expectation of privacy. Well, but if you put something in the control of somebody, even though you are related to that person, aren't you pretty well giving that person the right to decide what happens? I mean, I know you can say there's some argument as to whether he owned the plane or not, any number of things of that sort. But the moment you give it to somebody and put it, give it to that person, aren't you saying that that person is pretty well in charge? Or at least reasonably to anybody who would be doing a search? Not always, Your Honor. I think it matters what the relationship between the defendant and the person or place to be searched is. But how can an officer who is looking at this situation expect anything except that the person who is there has control? So even if we were to say that there was standing, which the district court found that there wasn't, wouldn't we be bound to say, under the exception to the exclusionary rule, that this was admissible? Because to any officer it would be perfectly sensible to have the person who is there say, okay. The officer isn't doing anything wrong, which is what the exclusionary rule is about. Well, I think, first off, it's a separate question whether he has standing or whether the defendant has an objectively reasonable expectation of privacy. And second, whether the search was valid. And I understand your point that the officer might perceive the person with the goods as having the ability to consent, say, to the search. But here we're challenging, we're saying that consent to the search was the worst in any event and that there was no, even if the automobile exception to that. That's a different issue. Well, is it really reasonable for an officer to make that kind of assumption? I mean, if it was a UPS plane and we knew that the pilot was transporting a bunch of other people's packages, would anybody think it was reasonable to assume that the pilot had the authority to authorize a search of opening all the packages on the plane? Right. No one would. Right. So it does seem like an officer should at least make some kind of inquiry into the relationship between the pilot and the cargo that's being transported on a plane. Exactly. And if you look at the case law concerning kind of a bailment situation, it's not, there's no hard and fast rule that the bailor lacks standing, but the bailee has standing. What is the relationship that you're arguing for here? You're saying that we have to look at the relationship between the pilot. And so why isn't this pilot an independent contractor who's being paid per consignment by taking these trips back and forth? I think there are a few things there. First off, the name we assigned to this relationship is not controlling. What is the relationship that is controlling? What is controlling? The evidence showed that the defendant and the pilot had a longstanding relationship, a relationship over the course of several years, that they were partners in another legitimate business venture, that the arrangement where the plane would be used. Are you saying that somehow the officers would have understood this? And all this goes back to Judge Calabresi's point. Or, I mean, doesn't the concept of apparent authority apply here? I don't think it does. I think there's an obligation to inquire. All the case law concerning this kind of situation, where someone has goods owned by another person, all of the case law discusses- What do you want us to do here? You don't want us to affirm the denial of the grant of suppression. But what do you think should happen here? You don't think we should say that they should have been suppressed? I think it would be reasonable for you to say we need more information about this important point that the district court never considered. This is your request for a hearing. Does it matter that they had this longstanding relationship and were friends if it was a career that he had hired just to transport his packages? Would that make a difference? I think it would because we're looking at what is society- what are we ready to accept in terms of privacy? And if you shove drugs into the purse of someone you've just met, I think we as a society will say, no, you didn't have an objective expectation of privacy in that bag. Right, but if I hired a courier or used a courier service, generally society thinks that I probably have an expectation that it's not going to be opened on the way, right? So doesn't it- isn't the important point that he was acting as a courier than that he was the guy's close friend? I think you could argue both. I don't think the fact- I think the fact that they were close long-term associates does factor into the analysis of whether Mr. Capelli's expectation of privacy- But I always- I come back to are you saying that a police person who looks must always ask about the relationship between this before they do it? Or are you saying that this being a courier, say if it were Federal Express, then the police should know that there is privacy? But how would they know in this case that there is that? That is, doesn't this fall in any event in the exception that we say that when a police person is acting in good faith, we don't exclude the evidence? I think there is an obligation where there are- where there's here a plane that's carrying goods to inquire. This isn't an obvious carrier like Federal Express, like the presiding judge has said. So it isn't a situation where somebody would know automatically that this is something where you need to inquire. This is something, you know, somebody is carrying. There may be other goods, there may not. But are you saying that in all such situations, a police person must first inquire, say, before I look, I have to find out what your relationship to the owner of the goods is before they can look? At the very least, do you own these goods? Are those your goods? Well, I mean, couriers come in all the time to the airports in New York, right? They have bags, they have drugs. And sometimes the agents have a tip, sometimes they don't. Sometimes it's a suspicious activity or they have a probable cause one way or another. And they go to this person and say, we'd like to look into your bags. And the person says, okay. And they do, and they find the drugs. Now, you're saying that that shouldn't happen, that the police should make an inquiry from that courier as to the relationship between that courier and the person who gave him the drugs or the rest of the conspiracy, if he knows that. That would turn the Fourth Amendment law in this area upside down, wouldn't it? I think there's a significant difference between the scenario you're painting and the one here. So you go to the airport with your suitcases. You know that the suitcases are going to be put on a belt and they're going to be looked at, and you give up the right to keeping the contents of those suitcases private, at least to the extent that TSA is going to go right through them. Well, we can modify the hypothetical if you want. I'm assuming that they don't go through the X-ray. But suppose the person is carrying them on their person or in a purse. And couriers or mules are normal in this business. And when they are stopped, very often the police find this out and then use this information to go back and try and see if they can find out who the source was or at least track it through to who the ultimate purchase is going to be. But it's done on the basis of what the officer's knowledge is at the time of the question. We don't expect the police to do more than that because it becomes really administratively unmanageable, don't we? I think in this situation the police should have done more than they did. Well, they did ask him about the plane, right? And he said he owned it. Yes, that's correct. Whether that's true or not, I don't know. And then he consented to what was on the plane. The duffel bags were there. He admitted to marijuana. I don't know. It seems to be that the police were doing everything they should do under the circumstances. And we shouldn't really be requesting them to do anything more. I think we're there, but there's no evidence I don't believe that the pilot ever said, yeah, those are my bags. Well, he said there was marijuana on the plane or there may be marijuana on the plane. Well, I don't know. Did the district court make a finding about that? So the district court in its opinion says the government contends that he said that there was marijuana on the plane. It doesn't seem to me the district court found that he actually said there was marijuana on the plane. And this question about whether the captain consented, I mean the district court didn't rely on the captain's consent. There's a factual question as to whether he was coerced or whether he actually consented. So these arguments about whether the officers have a duty to inquire when somebody with apparent authority consents seems to me somewhat misplaced. Because the relationship between Capelli and Burns here is relevant because the district court said whenever you give your bags to a third party, you don't have any Fourth Amendment interest in the bag. So our question is not whether somebody with apparent authority has consented to a search. The question is when you entrust your property to a bailee, you just categorically don't have a Fourth Amendment interest or don't have a reasonable expectation of privacy in those bags. That seems to be a different question. Yes, and no court has ever said that. No court has ever said a bailor automatically loses. My question is let's assume with you that the district court overstated, that they went to this point, which is a new point, which we would have to ride on if we agreed on or whatever. But short of that point, even if the district court was not correct in going that far, on these circumstances, isn't it clear enough so that a police person shouldn't have to do more than this one did? Because, you know, in terms of what the law is, it's all very interesting, but in terms of whether you win the case or not, that's what it ultimately turns out. I think the court would need more information to decide whether or not the officers should have inquired further of the pilot and the relationship between the pilot. Now you said at the beginning – we haven't gotten to this question – but you said at the beginning that the district court had decided because planes are mobile and it's a highly regulated industry that the Fourth Amendment doesn't apply. And perhaps that goes too far, but usually we say of automobiles that because they're highly mobile and are highly regulated that there's an automobile exception to the Fourth Amendment. So even if we were to think the district court went too far, why wouldn't the automobile exception apply to the plane? Okay, a couple of reasons. First off, they never got a warrant. They never had probable cause. But is that true they didn't have probable cause? So they're allowed to do a ramp check, right? There's no question about that. They're allowed to do a ramp check, and they – we've said in the context of a traffic stop that having a dog sniff the outside of a car doesn't violate anybody's reasonable expectation of privacy. So they could do that during the ramp check, and the dog smelled drugs. So why wasn't that probable cause to search the plane? Well, first off, we have no information about certain important facts like how long this lasted, how long before they got the dogs there. But more importantly, I'd like to point out that there is not a perfect symmetry between cars and planes. The reasons behind the automobile exception are that automobiles are highly mobile, which you could say about planes, too, in the way that it's been interpreted by the courts. But that doesn't go through – that doesn't go to someone's expectation of privacy, right? That only goes to whether or not you need a warrant. The fact that cars are highly regulated is the part that the courts have used to say, look, you have a lower expectation of privacy in a car because they're so highly regulated. Well, aren't planes even more highly regulated? I mean here you could just do a ramp check willy-nilly because that's what the regulations say, whereas you probably couldn't do that in the automobile context. So the important thing with a highly regulated principle is that it's not so much that there are a lot of regulations that apply to cars or planes or drivers or pilots. It's the ability the state has to enforce those regulations. So with cars, you're driving on a road. You're observable. The cops can pull you over. The cops can't pull over a plane. Well, yeah, but the regulators can require it to stop and do a ramp check, right? They can require the plane to land, right? I mean they can require the plane to land. Yes, but it's not an everyday occurrence. My problem with applying with the automobile exception to the plane exception is a different one. And that is if you read Professor Cao's wonderful book about why cars have been served, you see that there are all sorts of reasons why that happened in the 50s and the 60s that don't apply to planes. And it's this particular different thing in that. And to go from that just because it's regulated to the other misses the whole history of cars. I mean, I have problems with your argument at other levels, but I must say I'd be very hesitant to go to say, well, planes are cars because they're not. Do you have any cases from the government says there are five other circuits that have said that have applied the exception. And I wondered if you had any cases that go your way. No, but my way here is something different because we're not what the district, the district court never found. The district court didn't apply the automobile exception here in order to find this was all going well. It used the automobile exception to say that there's a lessened expectation of privacy in cars. What we're saying is. In planes. Right. That's what the district court said. Yeah. But what I'm saying is they're not the same. And in fact, you have a greater expectation of privacy, even though I realize in some ways that's counterintuitive because you have to go through so much more. The pilot or police are so much more complicated. But it's all about traveling on public thoroughfares. That's why we have a lower expectation of privacy. I mean, it's going through the air where there are air traffic controllers directing you and you have to coordinate with all sorts of government regulators and authorities. That's not doesn't look like a public thoroughfare. A couple of things. First off, a private plane like this. The record shows that they didn't have to. You don't have to file your flight plan with anyone. Are you sure about that? I think that's what the record said. Although in this case, I think the pilot did. Well, it seems to me, you know, I may not be in the record, but it would be common sense that somehow, somewhere, public authorities would be aware of every plane that's in the air at a given time. I don't know if that's true. Well, maybe not drones. I mean, just getting it back to this particular case, there's no dispute that they could do a ramp check. Right. They had the authority to do that. And so the dispute over the automobile exception is whether all they needed after that point was probable cause to search the plane or your argument that they needed a warrant because the automobile exception would not apply. Right. That's our argument. But here the court, the district court didn't even reach that. No, I understand. But, you know, but but but, you know, the initial premise of my question was assuming that your court went too far. Why wouldn't the automobile exception apply? And so it seems like the difference of opinion is that. And also there are many facts that need to be developed in the record that aren't. So, yes. Let me ask about that. So let's assume that the automobile exception applied and let's assume they did the external search with the dogs and the dogs sniffed the drugs. Why wouldn't that be probable cause? Why would we need more facts to decide whether there was probable cause to do a search of the plane? Because the time had elapsed between stopping or starting the ramshackle and when the dogs arrived. That's important. And we don't know that on this record? I don't believe we do. Let me ask another question about this. The automobile exception generally applies to people who are in cars and searching them and things. We're talking here about something different. We're talking about goods which are on that, which are separate from the person himself. In the automobile case, you're talking about whether you can search a person and the things that they have. Has that been applied simply to searching for a car, things that are in a car that have nothing to do with the person who is there? I mean, isn't this case structurally different? You're not talking about searching this guy with his things and asking whether the automobile exception. We're talking about whether because of the automobile exception, you can go and search this guy's goods, which seems to me a very different issue. But you're saying that he has less of an expectation of privacy because he wasn't on the plane? No, I'm not saying that. Well, that's I think what Judge Calabrese was suggesting and then you agreed. That's the government's argument here. That's one prong of what the district court found. He wasn't on the plane. No, I understand. But Judge Calabrese was just suggesting that because your client was not on the plane, he had less of an expectation of privacy in his goods that were on the plane. And you seem to agree with that. So why don't you respond to that point? So I'm not sure I understand that. Did your client have an expectation of privacy? The problem is that if there were the same expectations, then we might apply or think about the automobile exception. But I don't see why we'd even get to that when you have something which is completely different from what we're doing in automobile searches. Except isn't the point that the police here didn't have a warrant and so that's why the automobile exception might become important? So what the court was speculating is they had probable cause to search. But unless the automobile exception applies or some other exception to the warrant requirement, they would need a warrant. OK, well, you've reserved some time for rebuttal, so we'll hear from you again. Why don't we hear from the government? Mr. Kale. I'm sorry. It's a killer. I apologize. Your Honor, one of the main points that I would like to disagree with my adversary on is the point about whether the record was developed enough to show that the document was simultaneous or contemporaneous with the opposite approach. Please speak into the microphone. I apologize. In Mr. Capelli's appendix on page 49, in their motion, Capelli below said in the sixth line down or seventh line down, simultaneous to the DEA agents addressing Mr. Burns, officers from the Stratford Police Department descended on the airplane where the drug smithing came out. So I know counsel had said you had no idea. Right. They said to him, we're going to do a dog sniff search as part of the ramp check. Right. So they were prepared to do that when they initiated the ramp check. Counsel had said there would be no time delay between the dog sniff and the ramp check. And also we have case law that when it's a traffic stop, you can hold the car for half an hour or some period of time to let the dogs come. Right. And so if they were prepared to do it at the time of the ramp check, it seems that it would be within those cases. Yes, sir. Didn't the officers suspect that there were drugs on this plane? Yes. And that explains why the dogs were there. This wasn't something that was just unfolding as often happens. Seriatim on the street. Exactly right. Due to the unusual flight plan and the repeated flight plan that this airplane had taken, going to the southwest border from Northern California and then turning and coming to Connecticut. So that you say that there's probable cause in any event. Yes, Your Honor. And we don't need more facts about this. No, Your Honor. Based on the concession below, based on what was the record before the judge, I don't think this court needs more facts. How clear is it that the pilot consented? Your Honor, the pilot consented. He signed the form. More importantly, we can see from the developed record afterwards that he called Mr. Capelli and Mr. Bonner in different phone calls, lent his truck to the DEA, had them deliver the fake goods to Mr. Capelli and Mr. Bonner. So, Your Honor, this was not a situation where he was – this was a situation where he continued to consent and tried to cooperate affirmatively. Yeah, but there was no finding by the district court as to whether he was in a custodial interrogation or whether there was a Miranda violation or something, right? I mean, that's a disputed fact, right? Yes, sir. So we can't just say that he consented unless we're willing to make that finding for the first time on appeal. Yes, Your Honor. Based on the record before you – I think the automobile exception, I think, Your Honors, could go to consent. It would probably have to go back to the district court. Right. So if we were to say that it depends on the pilot's consent, we would have to send it back to the district court to make a finding about whether he consented. Yes, Your Honor. Right. So we could affirm now on the ground that the district court relied on, which is that there is no Fourth Amendment interest here, or on the automobile exception, if we think that there's enough evidence of probable cause in the record. Yes, Your Honor. Okay. Your Honor, addressing some other points, I know for the record that in this case even if Mr. – there were other factors present, Mr. Capelli was far away. Can we ask Your Honors? Okay. Let's – you just said that there are two ways that we could affirm. One is by applying the automobile exception, and two by saying that on the facts of this case, there was no expectation of privacy. Let's look at the second one. On the facts of this case, now the presiding judge has said that when you give something to somebody like Federal Express, you may well have an expectation of privacy. What is it about this case that moves that out of that category? Your Honor, I think we're – what Mr. Capelli is asking for is for a – Give the microphone, please. I'm sorry. I apologize, Your Honor. Again, I made the same mistake. The Fourth Amendment is not intended to protect a person who conspires to smuggle contraband within distances of himself from you on purpose. In other words, he put the risk entirely onto another person. He bought the drugs in California. He placed the risk entirely on another person of being caught, flew commercially back here, and he was even going to have this person deliver the drugs to him. To then allow that person to come back and claim privacy. What cases do you have that say that? Your Honor, I point to McKinnon 814 F. 2nd at 1545 from the 11th Circuit. It's a 1987 decision, but they went that way and I would respectfully ask that the court join that same rationale. I mean it's his plane – to say that it's all his – I mean he's the one who's the defendant, so the idea that he put all the risk on the pilot doesn't seem quite right. He still was arrested when they discovered the contraband, and it is his plane and it is his bags. There's no dispute about that. Well, Your Honor, actually he was only placed under jeopardy because Mr. Burns consented. If Mr. Burns had simply put up his hand, which happens in many of the courier cases that – Well, we just said that there's no finding that Mr. Burns consented, so either it's because the officer's a probable cause or because there's no reasonable expectation of privacy. But the point is it's not like Mr. Burns was in jeopardy for the whole thing. I mean Mr. Capelli was arrested and convicted. He was. Your Honor, I apologize. If we froze it at the point where the agents searched the plane, there's no trace of Mr. Capelli's claim to these bags, and they would never have arrested Mr. Capelli. So – I mean if they had found the bags, they would have inquired as to who owned them, wouldn't they? Wouldn't there have been a further investigation? But the only person who could have told them that they could have approached them had been Mr. Burns. But anyway, I'm just – when you talk about this thing about putting it all on a third person, I mean if you hire a courier to transport your goods, you are not just transferring that material to the courier, right? I mean do you agree with that as a general matter? Yes, Your Honor, depending on the situation. In the UPS situation that Your Honor mentioned earlier, there's a record of who the owner is. They send them – they drop them off. I mean we've said as a general matter that a bailee has a reasonable expectation of privacy in bailed property, right? Yes. So – except against the true owner. Wouldn't it be very odd to say that the actual owner doesn't have a reasonable expectation of privacy? Not – Like has even less of an expectation of privacy in his own property than the bailee does in that third party's property. That seems like an odd result, doesn't it? Your Honor, for four-dimensional purposes and for – as Judge Calarissi had noted earlier, it's what do police reasonably see? There is no current burden on police to inquire who owns this and in fact – That's what I want to come back to. I mean this is not a case of something like Federal Express where it is given that it says what it is. Do you – can we possibly say that the police, when they see somebody, a pilot who's running a plane with all sorts of goods or maybe not, cannot simply search those goods that are there without finding out who it is who was the owner of those things? I mean what are we doing in terms of a reasonable police behavior at that time, at the moment when goods are there? I think, Your Honor, that we're placing far too great a burden on the police at that point and we also have to give trust to the bailee. I mean that's – my point here is that you have a situation which is going to be, however this case is decided, will be precedent in this area and the extent to which one is requiring the police to do more than they did when they're acting in complete good faith, it would seem to me under Leon, doesn't seem to make too much sense. In this particular case, were the police operating on the assumption that Mr. Burns owned the bags on the plane? They knew that it belonged to Mr. Capelli when they searched them, right? No, not at all, Your Honor. So when did they find that out? They found that out from Mr. Burns. Right. They found that out from Mr. Burns, right? After the search, Your Honor. So when they searched the plane, it was based on what? It was based on the dogs sniffing the plane and identifying marijuana in the car. It was not based on an idea that Burns owned the goods and consented. If he did own the goods or didn't own the goods, wouldn't your position be that there was still probable cause? Why does it matter? So whether the police believed that they were owned by Burns or not owned by Burns, would it have made a difference? So let's say that they knew in advance that it belonged to somebody else, right? Let's say he was a UPS courier, but a dog still sniffed out drugs. Wouldn't you say that they would have the right to go in and search packages that dogs had identified as containing drugs? I guess so. So the case doesn't depend on whether the police had a perception that Mr. Burns owned the bags that were on the plane. It seems irrelevant. But do we need – Doesn't it? Wait, I can answer that question. No, sure. Your Honor, it's relevant to when police come into the area, they check, and if this person – I guess it's more relevant towards, for example, a consent issue. Right, so if he had consented, I understand. There would be a question as to whether he seemed to have apparent control and whether it was legitimate for him to consent. But that's just not this case. But I think I'm approaching it from the fact that what could we reasonably ask police to do? When police see an irregular flight pattern that goes to the southwest border and a repeated flight pattern, and they approach the plane, and the person says there's possibly marijuana on the plane – Yes, so exactly. So the argument that you're making now is they had reasonable suspicion to look at the plane because of the flight pattern, and then the dog sniffed out drugs, so they had probable cause. It has nothing to do with whether they perceived that Burns owned the bags or not – didn't own the bags. That's correct. That wouldn't have made a difference. So then the only question after that is whether they needed to go get a warrant after the dog sniffed. Is that right? Yes, Your Honor. What's your point on – I'd like to hear what you have to say about that. Sure. At the point of the – as counsel below consented to the simultaneous dog sniff, there was probable cause. And I think at this point the mobility of the plane, trying to figure out, for example, is there – they don't even know at that point if there's a co-pilot on the plane who could simply start the plane again and leave. At that point, they have probable cause to do, under an exception to the warrant requirement, to search the plane and then, for easy, if necessary, to get a warrant. I'm just wondering how far we need to go. I mean it may be a different case where we have this and we have the goods identified as belonging to somebody and whether in those circumstances the police, having known that there is – having probable cause that there is marijuana because of that, whether they then have to do something with respect to the person who owns them and a case like this one where they have a dog, they smell, they know these goods are there, they have no idea whom they belong to, they get something which may or may not be consent that is certainly not an aversion to searching. That is clear on the record on the part of the pilot. Under those circumstances, under Leon, are the police behaving in any way that is unreasonable? I'm just wondering how far we need to go in making new law for our circuit as against just finding that on the facts of this case, there's nothing to be said for the other side. I agree, Your Honor. I think that would be sufficient. I'm sorry. If there's no finding by the district court that Mr. Burns was not in a custodial interrogation where he had not been informed of his Miranda rights and you said that there's not a finding that he consented to the search, would it be enough to say, well, it seems like he wasn't averse to the search and so therefore the police could go search it? Have we ever said that that is sufficient to go – wouldn't we need a separate argument to allow that such as the automobile exception? We can't just say, well, the pilot wasn't averse to a search. He might have been in a custodial interrogation where he wasn't informed of his rights. He might not have given a consent to the search, but he wasn't averse to it, and so therefore the police were entitled to go and search the plane. That seems pretty extraordinary. I think, Your Honor, after the dog sniff, they had probable cause. Yes, okay, I understand. That's a separate argument. They had probable cause, so then it rests on the probable cause, not on the pilot's disposition toward the search. Yes, Your Honor, if I may make an argument, it is, as I said to Judge Walker, that once they had the dog sniff, probable cause, that is in circumstances existing. Right. Thank you, Your Honor. I don't see any other questions. Okay, thank you very much. Ms. Schneider, we'll hear from you on rebuttal. Thank you. Just two points. The fact that the pilot consented to a controlled delivery does not mean that his consent to search the plane was voluntary and not coerced. Secondly, although I realize there's a passing reference in a defense motion to the dog sniff being simultaneous with the ram check, the DEA report that is attached to the defense motion, which goes through every step of the ram check process, shows first there was questioning. They get the pilot out. They question him pursuant to the ram check. They notice his nervousness. He presented his documentation. There was further questions. There was an admission that there was marijuana on the plane. They read him his Miranda rights. He signs that and waives his Miranda rights. They ask for consent. He reads that and signs the consent. And it's only then, subsequently, as the DEA report states, that the dog was brought to sniff the plane. If he admits to marijuana, as you just said, and waives his Miranda rights, what is their – why isn't there probable cause at that point? Why isn't there probable cause? Yeah, why isn't there – wouldn't there be probable cause so that you don't really even need the dog search? It was equivocal. His admission of marijuana on the plane was equivocal. He said there may be marijuana on the plane. I don't know how much. Well, why isn't that probable cause that the pilot of the plane says there might be marijuana on the plane? Even if it's equivocal, it seems like that's something, isn't it? It's not proof beyond a reasonable doubt, but it may be probable cause, right? Well, there – I think that further – I think there needs to be an evidentiary hearing about the circumstances surrounding the stop of the pilot and the questioning and the dog sniffing. Well, we would need to do that if we were relying on his consent perhaps, as the government I think conceded. But if we're saying that all you needed was probable cause and that identifying drugs on the plane would allow for probable cause… Except then you would still need a warrant. Right, because you're saying the automobile exception doesn't apply. I understand. But if the automobile exception did apply, you would need probable cause. So under that hypothetical, let's say we applied it, whether the pilot said there might be marijuana on the plane or the dogs identified marijuana on the plane, you agree that that would be probable cause. But you're saying there might have been too much of a lag time between the questioning of him and the dogs arriving that it ended up being too much of a detention before probable cause developed. That's your argument. And also maybe too long a period of time between the time they first start questioning him, he admits the marijuana, he hasn't been given his Miranda rights at that point. Even if we were to agree with your argument and we found a violation of the Fourth Amendment here, why would we want to encourage the suppression in this case? Because the officers faced with these circumstances, which are novel in our circuit, other circuits have faced them, did what officers would normally do under the circumstances. I don't see where the officers engaged in a misstep, that they knowingly engaged in a misstep of the kind that we would want to deter by suppressing these drugs. I think if the court finds that my client's Fourth Amendment rights were violated and that the search was- Let me put Judge Walker's question in a slightly different way, but the same thing. Without deciding whether the automobile exception actually applies, on these circumstances, weren't officers acting reasonably because there was probable cause? It was close enough to what happens all the time in automobiles so that we can say that the police acted reasonably. And therefore, under Leon, we don't exclude. That is, without deciding necessarily that the automobile exception applies, in this context, weren't the police with probable cause acting reasonably? I believe that was what- Yeah, that's the substance of what I'm saying. In other words, you could put the actual circumstances of whether there's a Fourth Amendment transgression here aside if the police are acting reasonably. And it's happened many times where we've said there's a Fourth Amendment problem. However, police acted reasonably. There's no grounds for suppression. Suppression doesn't automatically follow a Fourth Amendment violation. It's a separate question. And very frequently, it turns on whether that makes sense from a deterrence viewpoint. I guess all I would say is I don't believe the police acted reasonably here, and this court does not have enough facts at this point to determine whether the police were acting reasonably. I suppose also your answer might be that if the automobile exception did not apply and there was a warrant requirement, we would, in fact, want to deter officers from not obtaining a warrant before conducting a search. Which we would do in future cases. And that is an answer that is better than mine. Okay. Thank you, Ms. Schneider. The case is submitted.